**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MATT BRUNS, ADAM LABERNIK, and SHANE DOYLE
on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

AUGUSTA NATIONAL, INC.

Defendant.

**Case No.: 1:24-cv-03058**

**DEFENDANT AUGUSTA NATIONAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

**ALSTON & BIRD LLP**

David Venderbush
90 Park Avenue
New York, New York 10016
(212) 210-9400
david.venderbush@alston.com

Rachel Lowe (*Pro hac vice*)
350 South Grand Avenue
51st Floor
Los Angeles, CA 90071
(213) 576-1143
rachel.lowe@alston.com

*Counsel for Defendant*
*Augusta National, Inc.*

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. PROCEDURAL BACKGROUND .......... 2

III. LEGAL STANDARD .......... 2

IV. THE COURT SHOULD GRANT ANI'S MOTION FOR JUDGMENT ON THE PLEADINGS .......... 3

- A. Pixel-Based VPPA Claims do not Plausibly Allege the Disclosure of PII. .......... 3
- B. Plaintiffs Allege Almost Identical Pixel Transmissions as Alleged in *Solomon*, *Hughes*, and *Nixon*. .......... 6

V. CONCLUSION .......... 8

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cleveland v. Caplaw Enters.*,
448 F.3d 518 (2d Cir. 2006)....2–3

*Hughes v. Nat'l Football League*,
2025 WL 1720295 (2d Cir. June 20, 2025) .... passim

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....4–5

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
6 F.4th 293 (2d Cir. 2021) ....3

*Nixon v. Pond5, Inc.*,
2025 WL 2030303 (S.D.N.Y. July 21, 2025) .... passim

*Pizza on 23rd Corp v. Liberty Mut. Ins. Co.*,
723 F. Supp. 3d 307 (S.D.N.Y. 2024)....2

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) .... passim

**RULES**

Fed. R. Civ. Pro. 12(b)(6) ....2–3

Fed. R. Civ. Pro. 12(c) ....2

**STATUTES**

18 U.S.C. § 2710(a)(3)....3

18 U.S.C. § 2710(b)(1) ....3

Video Privacy Protection Act ("VPPA") .... passim

# I. INTRODUCTION

The Court should grant Defendant Augusta National, Inc.'s ("ANI") motion for judgment on the pleadings. Recent Second Circuit law definitively forecloses Plaintiffs Matt Bruns, Adam Labernik, and Shane Doyle's ("Plaintiffs") single cause of action that use of the Meta Pixel (the "Pixel") violates the Video Privacy Protection Act ("VPPA"). In its own words, the Second Circuit has "effectively shut the door for Pixel-based VPPA claims." *Hughes v. Nat'l Football League*, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025), *reh'g en banc denied*, No. 24-2656, Dkt. 54.1 (2d Cir. Aug. 21, 2025).

In *Solomon v. Flipps Media, Inc.*, the Second Circuit held that allegations about information transmitted by the Pixel in "lines of computer code" using "the 'c_user' phrase" did not plausibly allege improper disclosure of a plaintiff's '"video-watching habits.'" 136 F.4th 41, 54 (2d Cir. 2025), *reh'g en banc denied*, No. 23-7597, Dkt. 57.1 (2d Cir. July 24, 2025). The Second Circuit in *Hughes* then applied *Solomon* to affirm dismissal of another VPPA lawsuit based on Pixel transmissions. And Judge Rochon of this Court applied *Solomon* and *Hughes* to dismiss another Pixel VPPA claim with allegations about "the c_user cookie" because "the Second Circuit has now twice rejected this theory." *Nixon v. Pond5, Inc.*, 2025 WL 2030303, at *5 (S.D.N.Y. July 21, 2025).

This Court should reach the same result here. Plaintiffs offer the same allegations about a defendant (here, ANI) using the Pixel to disclose information about what pre-recorded videos Plaintiffs watched on the defendant's website. *See* ECF 19, Amended Complaint ("Complaint or Compl.") ¶¶ 6, 20–22. These Plaintiffs identically rely on allegations that the Pixel shares with Meta a string of numbers and words containing the webpage's URL and the subscriber's Facebook user ID ("Facebook UID"), attached as part of the "c_user" field. *Id.* ¶¶ 112–116, 185. Plaintiffs fully bring themselves within the Second Circuit authority by relying on a screenshot of computer

code using the c_user phrase that is virtually identical to screenshots held to be insufficient as a matter of law. *See id.* ¶ 115 (Figure 5).

Plaintiffs' Pixel-based VPPA claim is not viable under Second Circuit law, and the Court should grant ANI's motion for judgment on the pleadings.

## II. PROCEDURAL BACKGROUND

On April 22, 2024, Plaintiffs filed this putative class action lawsuit against ANI on behalf of all persons who subscribed to the Website and whose video watching activities were allegedly "improperly disclosed to Facebook through the use of the Pixel." *See* ECF 1 at ¶ 134; *see also* Compl. ¶ 158. The Court stayed the case pending the Second Circuit's decision in another VPPA case. *See* ECF 11, Order Granting Motion to Stay Proceedings Pending Second Circuit's Decision in *Salazar v. National Basketball Association*, No. 23-1147. After the Second Circuit issued its decision and this Court lifted the stay, Plaintiffs amended their Complaint on February 14, 2025, to add additional parties but continued to assert a single claim under the VPPA based solely on the alleged use of the Pixel. The Second Circuit issued its decisions in *Solomon* and *Hughes* in May and June 2025.

## III. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). This Court has explained that "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings," judgment on the pleadings is appropriate. *Pizza on 23rd Corp v. Liberty Mut. Ins. Co.*, 723 F. Supp. 3d 307, 311 (S.D.N.Y. 2024) (citation modified).

"[T]he standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw*

*Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Stated differently, to survive dismissal, Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (citation modified).

## IV. THE COURT SHOULD GRANT ANI'S MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Pixel-Based VPPA Claims do not Plausibly Allege the Disclosure of PII.

Second Circuit precedent forecloses Plaintiffs' Pixel-based legal theory of a VPPA violation. On materially identical facts as here, the appellate court affirmed the dismissal of a VPPA claim for failure to plausibly allege disclosure of personally identifiable information ("PII"). *See Solomon*, 136 F.4th at 55. The Second Circuit affirmed *Solomon*'s holding in *Hughes*. *See Hughes*, 2025 WL 1720295, at *3. The Second Circuit has since refused to rehear both *Solomon* and *Hughes* en banc. *See Solomon*, No. 23-7597, Dkt. 57.1 (2d Cir. July 24, 2025); *Hughes*, No. 24-2656, Dkt. 54.1 (2d Cir. Aug. 21, 2025). This Court recently applied *Solomon* and *Hughes* to dismiss a substantially similar VPPA Pixel case with prejudice. *See Nixon*, 2025 WL 2030303, at *5–6. Those authorities require the Court to grant ANI's motion for judgment on the pleadings on Plaintiffs' substantially identical allegations.

To succeed on a VPPA claim, Plaintiffs must plausibly allege "that (1) a video tape service provider (2) knowingly disclosed to any person (3) personally identifiable information concerning her use of the service." *Solomon*, 136 F.4th at 44 (citing 18 U.S.C. § 2710(b)(1)). Plaintiffs' allegations cannot plausibly establish the third element. The statute defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."18 U.S.C. § 2710(a)(3). In *Solomon*, the Second Circuit adopted the

"ordinary person" standard with respect to assessing PII—finding that under the VPPA, PII "encompasses information that would allow an *ordinary person* to identify a consumer's video-watching habits," not "information that only a sophisticated technology company could use to do so." *Solomon*, 136 F.4th at 52 (emphasis added). As detailed below, *Solomon*'s holding equally applies here to preclude Plaintiffs' VPPA claim.

The plaintiff in *Solomon* alleged that the Pixel was installed on the defendant's website and collected information about users' interactions on its website, including through the "PageView" feature, which transmitted the URL and title of each video accessed, along with the user's Facebook UID embedded in the "c_user" cookie field. *Solomon*, 136 F.4th at 45–46. The plaintiff further alleged that "[e]ntering 'facebook.com/[an individual's Facebook UID]' into any web browser provides access to a specific individual's Facebook profile" and that, "[t]his basic method of accessing a person's Facebook profile is 'generally and widely known among the public.'" *Id.* at 46. The court held that these allegations failed to establish a disclosure of PII in violation of the VPPA because it is implausible that an ordinary person could identify plaintiff or plaintiff's video watching habits from a Facebook UID transmitted by the Pixel. *Id.* at 54–55.

The court in *Solomon* explicitly rejected a broader interpretation of PII that would include "computer code and digital identifiers" decipherable "only by a technologically sophisticated third party," reasoning that the VPPA is "more naturally read as referring to information that would permit an ordinary person to learn another individual's video-watching history." *Id.* at 52. The court further emphasized that "the VPPA was not intended to create liability where a third party is able to 'assemble otherwise anonymous pieces of data to unmask the identity of individual [users].'" *Id.* at 54 (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)). While acknowledging that plaintiff Solomon's complaint depicted some lines of computer

code containing a video title from the website, the court ultimately determined it "implausible that an ordinary person would look at the phrase 'title%22%3A%22-%E2%96%B7%20The%20Roast%20of%-20Ric%20Flair' . . . and understand it to be a video title." *Id*. Similarly, the court rejected the allegation "that an ordinary person . . . would see the 'c_user' phrase on [defendant's] servers and conclude that the phrase was a person's [Facebook UID]." *Id*.

Following *Solomon*, the Second Circuit in *Hughes* affirmed dismissal of a plaintiff's claim that the NFL violated the VPPA via the Pixel installed on the NFL's website allegedly transmitting a "single communication session" containing a viewer's Facebook UID in a "string of numerals following the 'c_user' field." *Hughes*, 2025 WL 1720295, at *2–3 (citation modified). Again, the court reiterated that an ordinary person would not plausibly "see the 'c_user' phrase on this communication and conclude that the phrase was a person's [Facebook UID.]" *Id*. at *3 (quoting *Solomon*, 136 F.4th at 54). *Hughes* therefore held that in light of *Solomon*, the "door for Pixel-based VPPA claims" has been "effectively shut." *Id.* at *2 (affirming dismissal of plaintiff's Pixel-based VPPA claim with prejudice because plaintiff did not allege disclosure of PII under the VPPA).

At the time of this filing, at least one court in this district has applied *Solomon* and *Hughes* to dismiss another VPPA lawsuit asserting a Pixel-based theory with prejudice. In *Nixon*, the court found that the plaintiffs' allegations "mirror those found insufficient" in *Solomon* and *Hughes* and that while "[p]laintiffs assert that their [Facebook UIDs] can be identified from the c_user cookie and can thus be used to identify their individual video-watching habits, the Second Circuit has now twice rejected this theory" under the ordinary person standard established in *Solomon*. *See Nixon*,

2025 WL 2030303, at *5 (citation modified) (granting defendant's motion to dismiss Pixel-based VPPA claim and denying plaintiffs' request for leave to amend).

### B. Plaintiffs Allege Almost Identical Pixel Transmissions as Alleged in *Solomon*, *Hughes*, and *Nixon*.

Plaintiffs' allegations here are indistinguishable from the cases discussed above. Distilled, Plaintiffs' allegations of disclosure are that the title of videos they watched on the Website was included as part of a multiple-line URL consisting of random characters, and that a numerical Facebook UID was included with the c_user field, which constituted Plaintiffs' PII. *See, e.g.*, Compl. ¶¶ 111–17.

Figure 5 in the Complaint (reproduced below) depicts a six-line URL that is allegedly transmitted to Facebook via the Pixel. Buried in line three of six of the below URL is what Plaintiffs allege is the title of a video on the Website.

| ▾ Request Headers | |
|---|---|
| :authority: | www.facebook.com |
| :method: | GET |
| :path: | /tr/?<br>id=2346605755404262&ev=PageView&dl=https%3A%2F%2Fwww.masters.com%2Fen_US%2Fwatch%2F<br>2024-04-<br>14%2F1713152679310793 7%2Fstuckey_honored_with_green_jacket_award_of_excellence.html&rl=https<br>%3A%2F%2Fwww.masters.com%2Fen_US%2Fvideos%2Findex.html&if=false&ts=1713560582203&sw=1<br>536&sh=864&v=2.9.154&r=stable&ec=0&o=4126&fbp=fb.1.1713560342164.520658310&cs_est=true&<br>ler=empty&cdl=API_unavailable&it=1713560582133&coo=false&rqm=GET |
| :scheme: | https |
| Accept: | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| Accept-Encoding: | gzip, deflate, br, zstd |
| Accept-Language: | en-US,en;q=0.9 |
| Cookie: | sb=sATZYyHbM_JpCBYKkdn1MuNp; datr=BaboZWMvTk7pLVQuOSysd0td; c_user= |

*Figure 5 - Embedded c_user cookie in Pixel Request transmitted to Facebook*[73]

*See* Compl. ¶ 115 at Figure 5. And they assert the red box contains the c_user cookie field, which notably—according to Plaintiffs' allegations—could perhaps show a user's Facebook UID but instead is blank. *See id.* ¶ 116 ("Both the Microdata and PageView events, when triggered,

independently and automatically result in the sharing of a user's website interactions (including Video Watching Data) and UID with Facebook.").

For comparison, a screenshot from the plaintiff's complaint in *Hughes* is virtually identical. The plaintiff there complained that a long string of characters (allegedly the URL of a video), and a c_user field containing numbers (allegedly a user's Facebook UID) was transmitted via the same Pixel:

```
Request URL: https://www.facebook.com/x/oauth/status?client_id=404205130228139&input_token&origin=1&redirect_uri=https%3A%2F%2Fwww.nfl.com%2Fvideos%2Fburton-jalen-ramsey-refusing-to-praise-bills-ahead-of-week-1-matchup&sdk=joey&wants_cookie_data=true
Request Method: GET
Status Code: 200
Remote Address: 157.240.2.35:443
Referrer Policy: strict-origin-when-cross-origin

▸ Response Headers (20)
▾ Request Headers
:authority: www.facebook.com
:method: GET
:path: /x/oauth/status?client_id=404205130228139&input_token&origin=1&redirect_uri=https%3A%2F%2Fwww.nfl.com%2Fvideos%2Fburton-jalen-ramsey-refusing-to-praise-bills-ahead-of-week-1-matchup&sdk=joey&wants_cookie_data=true
:scheme: https
accept: */*
accept-encoding: gzip, deflate, br
accept-language: en-US,en;q=0.9
cookie: datr=yMoDYisDUFmeXJy_jphtjpuJ; sb=y8oDYuGCws0_dL4A78BrOshS; c_user=767858528; dpr=1.25; usida=eyJ2ZXIiOjEsImlkIjoiQXJobGJ1bGI3d3kwciIsInRpbWUiOjE2NjIxMzUzNTd9; xs=31%3Ahpq3EXTJcmb6rw%3A2%3A1658853793%3A-1%3A2390%3A%3AAcW5jDVmcDPOHpGZCFoXOANfyNGOvo3w3fIIBcfdlfY; fr=0kgxrDgVB8jIgSHGN.AWVE4L65HFLm1lYBG_strfvL0OI.BjF6WT.F6.AAA.0.0.BjF6dY.AWVVCpRJZgg
origin: https://www.nfl.com
referer: https://www.nfl.com/
sec-ch-ua: "Chromium";v="104", " Not A;Brand";v="99", "Google Chrome";v="104"
sec-ch-ua-mobile: ?0
sec-ch-ua-platform: "Windows"
sec-fetch-dest: empty
sec-fetch-mode: cors
sec-fetch-site: cross-site
```

*Hughes*, 2025 WL 1720295, at *2 (highlights added). Regarding the above screenshot, the *Hughes* court found that the alleged transmission of a video title via the Pixel "interspersed with many characters, numbers, and letters" did not allow "an ordinary person . . . 'with little or no extra

effort'" to identify the video a website visitor watched, and was thus not actionable under the VPPA. *Id.* (quoting *Solomon*, 136 F.4th at 54).

Plaintiffs in *Nixon* tried (and failed) again, alleging that the same Pixel "automatically caused their personal identifiers," including the c_user cookie, which contains a Facebook UID, along with the titles of the videos they viewed, to be sent to Meta. *See Nixon*, 2025 WL 2030303, at *1. Like here, and like the plaintiffs in *Hughes* and *Solomon*, the plaintiffs' complaint in *Nixon* "include[d] screenshots depicting the information sent to Meta from a visitor's browser by the Meta Tracking Pixel when a visitor watches or downloads a video on [defendant's] website." *Id.* at *5–6. And again, the court in *Nixon* denied plaintiffs' Pixel-based VPPA claim for failure to plausibly allege a disclosure of PII under the statute. *Id*. at *5 ("Since an ordinary person would not plausibly be able to identify Plaintiffs' video-watching habits as a result of the Pixel transmissions, Plaintiffs have not plausibly alleged that [defendant] disclosed [PII] in violation of the VPPA.").

At bottom, the Second Circuit has made it abundantly clear that video titles transmitted in an interspersed format, precisely as Plaintiffs' pleadings allege, are not actionable because an ordinary person would not understand the transmission to reflect a video title; furthermore, an ordinary person would not plausibly know that the information listed following the c_user field corresponded to an individual's Facebook UID. *See Solomon*, 136 F.4th at 54–55; *Hughes*, 2025 WL 1720295, at *2–3; *see also Nixon*, 2025 WL 2030303, at *5. Because the transmissions of video titles and the c_user field that Plaintiffs allege occurred here are nearly identical to the transmissions the *Solomon*, *Hughes*, and *Nixon* courts found to be inactionable, Plaintiffs' VPPA claim cannot move forward, and judgment should be granted in Defendant's favor.

## V. <u>CONCLUSION</u>

Accordingly, the Court should grant ANI's motion for judgment on the pleadings.

Dated: August 22, 2025

Respectfully submitted,

**ALSTON & BIRD LLP**

*/s/ David Venderbush*
David Venderbush
90 Park Avenue
New York, New York 10016
(212) 210-9400
david.venderbush@alston.com

Rachel Lowe (*Pro hac vice*)
350 South Grand Avenue
51st Floor
Los Angeles, CA 90071
(213) 576-1143
rachel.lowe@alston.com

*Counsel for Defendant Augusta National, Inc.*

**WORD COUNT CERTIFICATION**

As required by Local Civil Rule 7.1(c), I hereby certify that this document complies with the word-count limitations set forth in Local Civil Rule 7.1(c). This document contains 2,209 words, excluding the caption, table of contents, table of authorities, signature block, and this certification.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 22, 2025

Respectfully submitted,

*/s/ David Venderbush*

David Venderbush
90 Park Avenue
New York, New York 10016
(212) 210-9400
david.venderbush@alston.com